| | | |
|---|---|---|
| PAULINE GIBBS, <br> Individually and as Personal <br> Representative of the Estate <br> of PAUL GIBBS, deceased <br> 17702 Coatbridge Place <br> Olney, Maryland 21221 | * <br><br> * <br><br> * <br><br> * | IN THE CIRCUIT COURT OF <br><br> FOR MONTGOMERY COUNTY <br><br> Case No. C-15-CV-24-002905 |
| Plaintiff | * | |
| v. | * | |
| MONTGOMERY COUNTY, MARYLAND <br> 101 Monroe Street, 2nd Floor <br> Rockville, MD 20850 | * <br><br> * | |
| SERVE ON: <br> Marc Elrich <br> 101 Monroe Street <br> Rockville, Maryland 20850 | * <br><br> * | |
| Defendant | * <br> * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT AND DEMAND FOR A JURY TRIAL**

Now comes the Plaintiff, PAULINE GIBBS, Individually and as the Personal Representative of the Estate of Paul Gibbs, deceased, by and through her attorneys, Matthew E. Bennett and The Law Office of Matthew E. Bennett and Jonathan R. Carroll and Jezic and Moyse, LLC and hereby sues the above named Defendant and for reasons states as follows:

PARTIES

1. Plaintiff PAULINE GIBBS is the surviving mother of decedent, Paul Gibbs, who met his untimely death while in custody of the Montgomery County Department of Correction and Rehabilitation. Mr. Gibbs was being held at the Montgomery County Detention Center and was in protective custody under a heightened suicide prevention monitoring during the time period dating from October 12, 2021 up to and including November 1, 2021, when the decedent died in

1

Defendant's custody at the age of 23. PAULINE GIBBS is also the Personal Representative of the Estate of Paul Gibbs and a resident of Montgomery County, Maryland.

2.Defendant MONTGOMERY COUNTY ("the County") is the governing authority of Montgomery County, Maryland, which is categorized as a municipality in the State of Maryland empowered to carry out certain governmental functions within its geographic limits and may sue and be sued in its own name for torts committed by its agents and employees. One of the governmental functions performed by the County is the operation of the Montgomery County Department of Correction and Rehabilitation which includes the Montgomery County Detention Center.

## JURISDICTION, VENUE, AND NOTICE

3.Jurisdiction is proper in this Court as the amount in controversy exceeds $30,000 and Plaintiff's demand a jury trial. Venue is proper in the Circuit Court for Montgomery County because the events that are the subject of this lawsuit occurred in Montgomery County.

4.Plaintiffs filed a Notice of Claim with the Montgomery County and request to preserve evidence on or about January 5, 2022. The Defendant Montgomery County acknowledged receipt of the claim on January 25, 2022.  Exhibit A.

## FACTS COMMON TO ALL COUNTS

5.Plaintiffs reincorporate as if fully stated herein the allegations of Paragraphs 1 through 4, and further allege on information and belief as follows:

6.On or about October 12, 2021, the decedent Paul Gibbs (*hereinafter*, "Mr. Gibbs"), who had just turned 23 years old, began to exhibit signs of mental confusion and distress. His mother, Plaintiff Pauline Gibbs took him to their health care provider Kaiser Permanente's facility where he had a telehealth appointment with mental health provider Anna Brexault. Upon

2

information and belief, the decedent had been on a depression medication called Wellbutrin but the medication had been discontinued because it was causing him to suffer sleeplessness.

7. Prior to this time, Mr. Gibbs had never had contact with the criminal justice system and was a law abiding, peaceful and respectful citizen.

8. On or about October 13, 2021, in the late afternoon/early evening hours, Mr. Gibbs was involved in an incident where he was suspected of causing an automobile collision, failing to remain at the scene of the accident, and assault.

9. When police officers arrived, they searched out and located Mr. Gibbs, who was acting erratically and displaying signs of mental illness. Thereafter, he was arrested by Montgomery County Police Officers Simon and Renehan. During the arrest Mr. Gibbs suffered a laceration to his chin while struggling in the handcuffs. Mr. Gibbs was in clear mental distress and when cuffed he then went limp and attempted to kick at the police officers while handcuffed.

10. Thereafter, around 6 p.m., police officers Rand and Renehan transported Mr. Gibbs to Seven Locks Detention Center (*hereinafter*, "the jail"). During this transport and at all times herein, Gibbs was clearly in great mental distress. While cuffed, he broke the handle on the vehicle and when he was pulled from the car, Gibbs went limp and began kicking his legs notwithstanding the fact that his ankles were securely shackled.

11. As a result of the laceration to the chin, police officers then transported Mr. Gibbs to Shady Grove Adventist Hospital at approximately 6:45 p.m. Mr. Gibbs was treated for a "deep cut under the chin and on the lower lip." Health care providers applied saline and pressure but they were unable to apply a dressing because of Mr. Gibbs' distressed state. Mr. Gibbs was in such a distressed state that he refused stitches so the hospital personnel sealed the laceration with glue.

3

12. Mr. Gibbs was then transferred back to the jail. A medical intake form from the jail stated he was admitted at 6:16 p.m. on October 13, 2021. However, this eight-page document called "Initial Medical Screening Form" was left blank, notwithstanding Mr. Gibbs' acute state of distress and the fact that he had been taken into custody under after having suffered a physical injury.

13. On or about October 14, 2021, Mr. Gibbs was evaluated at the jail by Hannah Lee (*hereinafter*, "Lee"), LCSW-C of the MCDCR Crisis Intervention Unit for an Individualized Special Handling Plan. They found the need for "mental illness/suicide precaution," "suicide observation, level 1," "handcuff out of cell," "restrict to lower level," and Mr. Gibbs was provided a suicide gown and suicide blanket and mattress. Hygiene items were only allowed in the shower.

14. At or about this time, because of his highly distressed state and resistance, Mr. Gibbs was put in a restraint chair and an individual working at the jail noted in his chart: "RESTRICTIONS MUST NOT BE LIFTED WITHOUT CIU THERAPIST APPROVAL. CORRECTIONS STAFF MAY INSTITUTE ADDITIONAL RESTRICTIONS AS NEEDED BUT MUST NOTIFY THERAPEUTIC STAFF VERBALLY OR AFTER HOURS VIA EMAIL."

15. At or about this time, Lee observed Mr. Gibbs standing at cell door wrapped with suicide blanket and tapping the glass. Mr. Gibbs said something about a mental institution and that he could not recall being arrested. He yelled, "get me out of here. I want to leave" while trying to open the door." Lee further noted that Mr. Gibbs presented "psychotic, delusional, paranoid. Not oriented to place, time, situation" and she suspected schizophrenia or possible substance use which Mr. Gibbs denied.

4

15. Thereafter, on October 14, 2021 Mr. Gibbs continued to show signs of significant mental and psychological distress and his jail records are replete with notations regarding his mental and psychological distress including, but not necessarily limited to the following:

   a. Case worker LCSW-C Maiotte Ozkirbas called Gibbs' mother at approximately 11:48 am. Therapist Ozkirbas noted the history from Ms. Gibbs that Gibbs "has a history of manic depression and is engaged in outpatient therapy. Is prescribed Wellbutrin. However, due to recent change in mental status, his therapist recommended seeking inpatient hospitalization. It was around this time that client began acting increasingly erratic and got arrested."

   b. Ozkirbas also noted that Gibbs was mostly non-verbal and would not cooperate with interviewer. Gibbs is referred Gibbs to CIU housing because he is "unsuitable for G[enreal] P[opulation]" and required "full suicide precautions," and psychiatric treatment; he was deemed to be "priority 1 status.

   c. Ozkirbas also reported that, before Gibbs' arrest, he exclaimed to his mother something to the effect of "it's not really you. It's not you" and then he took her car and left the house. Ozkirbas noted that Ms. Gibbs said that she suspected that Gibbs may have schizophrenia and that she'd been seeking to have him admitted at around the time the arrest happened.

   d. Ms. Gibbs also provided info that he had been diagnosed with manic depression, that he did not use drugs and that he was doing outpatient therapy and taking Wellbutrin, but that was discontinued two days prior because it was making him manic/unable to sleep. The report also stated that Gibbs had been paranoid and delusional, distancing from friends over past couple years.

   e. According to Ozkirbas, Gibbs exhibited an "impaired ability to make reasonable decisions," that he was disoriented to where he is and why, and that he was psychotic, delusional, paranoid, suspicious of everyone, uncooperative and combative. She stated: "Judgment, insight and reasoning are severely impaired. Impulse control is very poor." "Agitated and uncooperative since time of arrest. …from the time he came into [Central Processing Unit]…had to be placed in restraint chair. DOCR staff had MULTIPLE USES OF FORCE …due to combative behavior." Was "temporarily committed" because he was "uncooperative with commissioner."

16. According to the records, jail personnel observed that Mr. Gibbs was completely unaware of where he was, why he was arrested or what he was charged with and extremely confused generally and including not having any understanding regarding the sequence of events

5

of and leading up to his incarceration. Mr. Gibbs insisted they are "setting him up" and that he did nothing to warrant arrest.

17. Accordingly, as indicated elsewhere herein, Mr. Gibbs was determined to be "Not suitable for general population" and he was ordered placed on "FULL SUICIDE PRECAUTIONS" and referred for court ordered diagnostic evaluation. The therapists' findings included mental disorder, bipolar depression, r/o schizophrenia and priority referral to psychiatrist was ordered while Mr. Gibbs was "to be housed in "R&D on FULL SUICIDE PRECAUTIONS".

18. Based on placing Mr. Gibbs on suicide monitoring and strict protective custody through its case workers, employees, contractors and/or personnel of MCDCR (and by extension, Defendant Montgomery County) had clear notice that Mr. Gibbs had the propensity to cause self-harm and otherwise behave in self-destructive ways.

19. On or about October 15, therapist Lee, met with Mr. Gibbs. She observed Mr. Gibbs naked in front of his cell and asked him several times to cover up and Mr. Gibbs just tearfully tapping the door and responding to "internal stimuli" and pulling on door handle saying, "go go."

20. Lee noted that custody informed her that he was not eating at all and, although she attempted to engage him, Mr. Gibbs remained nonverbal with flat affect, disheveled, guarded, paranoid, confused, disoriented, and staring off.

21. Lee then recorded that the custodial plan was for Mr. Gibbs to remain housed in CIU and "REMAINS ON SUICIDE PRECAUTIONS AT THIS TIME. Court diagnostic evaluation recommended. <u>I/M WILL PLACED ON FOOD LOG IF HE SHOWS PATTERN OF NOT EATING.</u>" However, upon information and belief, the initiation and/or follow through

6

with regard to Gibbs being placed on a food log never occurred or, if it had occurred, the food log was not reasonably, properly, or adequately maintained, tracked, updated, or otherwise properly attended to.

22. At some point on that same date, Gibbs had a bail hearing. While Ms. Gibbs attended the hearing, she was informed Gibbs refused to attend the hearing because of his acute state of mental distress.

23. Gibbs erratic behavior continued over the next two weeks. From October 18 to October 22, the MCDCR Crisis Intervention Unit continued to monitor Gibbs through his Individualized Special Handling Plan. During this time, Gibbs' record was again noted that, "RESTRICTIONS MUST NOT BE LIFTED WITHOUT CIU THERAPIST APPROVAL. CORRECTIONS STAFF MAY INSTITUTE ADDITIONAL RESTRICTIONS AS NEEDED BUT MUST NOTIFY THERAPEUTIC STAFF VERBALLY OR AFTER HOURS VIA EMAIL."

24. On October 18, 2021, Lee indicated that Gibbs was wanting a shower but when she tried to engage him, he only engaged very minimally with "blank stares," mostly unresponsive to mental status questions and, as previously, he could not answer why he was incarcerated. Lee noted that the status quo had not changed as Gibbs continued to appear depressed with flat affect and although his behavior seemed calmer, his thought process was illogical with minimal volume speech, poor judgment, and insight. She further remarked: "Thought processes tangential, confused, responses delayed. Thought content non-overtly psychotic... minimal coping strategies"

25. In her October 19, 2021 therapy note Lee noted that Gibbs was saying he wanted to get out and asking her for water because he did not want to go to the bathroom well. She

7

observed that, while Gibbs presented again as calmer, his engagement with her was very minimal, tangential, childlike, and reclusive. He also refused enrollment in the MCDRC phone program and she stated that he "remains on level until further observation."

26. On October 22, 2021 Gibbs' MCDCR medical note indicates that he refused TB screening, denied symptoms and risk factors or family history of TB. Nurse Samuda stated Gibbs was "unable to test. Patient presented as paranoid and emotional. Will continue to follow."

27. On or about October 26, 2021, Ms. Gibbs received an email from stating that Gibbs is guarded, paranoid, uncooperative about being cuffed to leave cell, grabs things, unsafe to try to give him a phone to call her. He was found non-competent and awaiting transfer to a state hospital which could take several weeks.

28. On or about October 26, 2021, the therapy note by Lee says "I/M was lying in bed responding minimally to TW. I/M replied 'ok' if he wanted a shower. Was compliant with handcuffing to walk to shower but then "dropped to the floor after walking partially to the showers" & he had to be guided back to his cell via jumpsuit since he was not cooperating. Checked boxes stating his mood was "unknown," affect was "flat,", appearance "disheveled," behavior "withdrawn," eye contact and judgment "poor" and voice "low" minimal volume.

29. The note further states, "TW unable to complete MH assessment. I/M affect flat, blank stares. Slow to respond, slow to process. Minimal engagement with TW Mother is main support." "I/M remains on level one, it tractable. Continuing to refuse TB testing, no rec at this time. Waiting for hospital transfer during pandemic."

30. Ms. Gibbs received call from a prison guard who stated that "he went to check on Paul [Gibbs] he was laying on the floor naked and unresponsive." Ms. Gibbs asked the guard to call 911 & get help.

31. No jail records From October 29, 2021 through October 31, 2021 have been produced to the Plaintiff even though all jail records were requested.

32. On November 1, 2021, a note in Gibbs' inmate medical records at 15:50 hours states: "Responded to medical emergency in CIU at approximately 1445. Upon arrival PT was undergoing CPR and attached to AED. While there PT would have sporadic faint carotid pulse. … Transported to Shady Grove via EMS."

33. The EMERGENCY MEDICAL TRANSPORT FORM dated November 1, 2021 states, "Patient found unresponsive CPR initiated," and "Unable to obtain V[ital] S[igns]." This form is not signed.

34. The Shady Grove hospital records report the history of present illness as follows: "patient is a 23 yr old male brought in by EMS from jail. Patient was on suicide watch to jail, HAS NOT BEEN eating or drinking anything for the past SEVERAL days. Patient last seen well at 2:30 p.m.… Was found unresponsive at 2:45 pm." This information was provided by jail personnel and is doubtfully accurate where is states that "Patient last seen well at 2:30 p.m."

35. On November 1, 2021, Gibbs died. The autopsy report has not been furnished to the Plaintiff, despite requesting same, and the death certificate states that the manner of death is pending and that the "Disease, injuries, or complications that directly caused the death" is also pending.

36. Based on the jail and hospital records, it is the Plaintiff's allegation that Gibbs died from starvation.

37. At all times herein relevant, various unknown individuals who were working at the jail for MCDCR (and by extension, Defendant Montgomery County) had a duty to keep Gibbs safe and to reasonably provide for his well-being.

9

38. As Gibbs was not eating or drinking and was showing signs of severe mental disease and distress, the various unknown individuals employed at the jail were on notice that Gibbs was in need of significant services to make sure he did not starve to death or die from related causes.

39. At all times herein relevant, the various unknown individuals employed by Montgomery County acted in a wanton, reckless, grossly negligent and/or malicious manner and at all times herein relevant said employees were acting within the scope of their employment.

**Count 1 – Wrongful Death – Based on a Violation of the Maryland Declaration of Rights, Article 16**

40. Plaintiff incorporates as if fully stated herein the allegations set forth in Paragraphs 1 through 39, and further allege as follows:

41. The Plaintiff, as mother of Paul Gibbs, is a wrongful death beneficiary under Md. Code Ann., Cts. and Jud. Proc. Art. 3-901 et seq.

42. This suit is timely filed within three years of Paul Gibb's death.

43. Under the wrongful death statute, "[a]n action may be maintained against a person whose wrongful act causes the death of another." Person, per the wrongful death statute, includes entities, such as Defendant Montgomery County.

44. Various unknown individuals who were working at the jail for MCDCR (and by extension, Defendant Montgomery County) illegally, unreasonably, intentionally, wantonly, recklessly, maliciously, and/or with gross negligence caused the death of Mr. Gibbs by failing to feed him and other reasonably provide for his well-being and safety.

45. By doing so, the aforementioned unknown jail employees committed and inflicted illegal and unconstitutionally cruel and unusual punishment in violation of Mr. Gibb's rights under the Maryland Declaration of Rights, Article 16.

46. This cruel and unusual punishment in starving the decedent and failing to keep the decedent sufficiently nourished to remain alive was intentional, malicious, unreasonable, undertaken with gross negligence and/or with reckless disregard for human life and without justification.

47. At the time of said cruel and unusual punishment, Mr. Gibbs was handcuffed and otherwise restrained and imprisoned on suicide watch and protective custody and he posed no threat of harm or nuisance to any jail employees or to anyone else in this confined, incarcerated, shackled state.

48. Under the circumstances alleged herein, the actions and omissions of unknown jail employees were unreasonable and unjustifiable and the cruel and unusual punishment was illegal and in violation of the decedents rights under Article 16 of the Maryland Declaration of Rights.

49. The wrongful acts and omissions unknown jail employees, of described above, factually, directly, and proximately caused Mr. Gibb's injuries and death and also proximately caused the Plaintiff to sustain pecuniary loss, mental anguish, emotional pain and suffering and other damages arising out of the death of Mr. Gibbs.

50. All of the Plaintiff's claims, past, present, and prospective were, are, and will be due solely to and by reason of the wrongful acts and/or omissions of the unknown jail employees, without any negligence or want of due care on the part of the Plaintiff or the decedent contributing thereunto.

51. The aforementioned unknown jail employees were agents, servants, and/or employees of Montgomery County and therefore Montgomery County is vicariously liable for the acts and omissions of the unknown jail employees.

WHEREFORE, Plaintiff GIBBS, as Personal Representative of the Estate of Paul Gibbs, claims compensatory damages in an amount that exceeds $75,000.00 and claims punitive damages

in the amount of $10,000,000.00, and claim such other and further relief to which Plaintiff may be entitled.

### Count 2 – Wrongful Death – Based on a Violation of the Maryland Declaration of Rights, Article 24

52. Plaintiff incorporates as if fully stated herein the allegations set forth in Paragraphs 1 through 51, and further allege as follows:

53. The Plaintiff, as mother of Paul Gibbs, is a wrongful death beneficiary under Md. Code Ann., Cts. and Jud. Proc. Art. 3-901 et seq.

54. This suit is timely filed within three years of Paul Gibb's death.

55. Under the wrongful death statute, "[a]n action may be maintained against a person whose wrongful act causes the death of another." Person, per the wrongful death statute, includes entities, such as Defendant Montgomery County.

56. Various unknown individuals who were working at the jail for MCDCR (and by extension, Defendant Montgomery County) illegally, unreasonably, intentionally, wantonly, recklessly, maliciously, and/or with gross negligence caused the death of Mr. Gibbs by failing to feed him and other reasonably provide for his well-being and safety.

57. By doing so, the aforementioned unknown jail employees violated Mr. Gibbs' due process rights guaranteed by Maryland Declaration of Rights, Article 24.

58. This due process violation resulted from the aforementioned unknown jail employees failure to keep the decedent sufficiently nourished to remain alive and was intentional, malicious, unreasonable, undertaken with gross negligence and/or with reckless disregard for human life and without justification.

59. At the time of the due process violation, Mr. Gibbs was handcuffed and otherwise restrained and imprisoned on suicide watch and protective custody and he posed no threat of harm or nuisance to any jail employees or to anyone else in this confined, incarcerated, shackled state.

60. Under the circumstances alleged herein, the actions and omissions of unknown jail employees were unreasonable and unjustifiable and due process violation abridged Mr. Gibbs' rights protected decedents rights under Article 24 of the Maryland Declaration of Rights.

61. The wrongful acts and omissions unknown jail employees, of described above, factually, directly, and proximately caused Mr. Gibb's injuries and death and also proximately caused the Plaintiff to sustain pecuniary loss, mental anguish, emotional pain and suffering and other damages arising out of the death of Mr. Gibbs.

62. All of the Plaintiff's claims, past, present, and prospective were, are, and will be due solely to and by reason of the wrongful acts and/or omissions of the unknown jail employees, without any negligence or want of due care on the part of the Plaintiff or the decedent contributing thereunto.

63. The aforementioned unknown jail employees were agents, servants, and/or employees of Montgomery County and therefore Montgomery County is vicariously liable for the acts and omissions of the unknown jail employees.

WHEREFORE, Plaintiff GIBBS, as Personal Representative of the Estate of Paul Gibbs, claims compensatory damages in an amount that exceeds $75,000.00 and claims punitive damages in the amount of $10,000,000.00, and claim such other and further relief to which Plaintiff may be entitled.

### Count 3 – Survival Action – Based on a Violation of the Maryland Declaration of Rights, Article 16

13

64. Plaintiff incorporates as if fully stated herein the allegations contained in Paragraphs 1 through 63, and further alleges as follows:

65. Pursuant to Md. Code, Cts. & Jud. Proc., § 6-401, the decedent's rights of action for unconstitutional, wrongful, malicious, grossly negligent and/or reckless conduct against the Defendant survives in favor of Pauline Gibbs, the Personal Representative of the Estate of Paul Gibbs, who brings these claims.

66. Various unknown individuals who were working at the jail for MCDCR (and by extension, Defendant Montgomery County) illegally, unreasonably, intentionally, wantonly, recklessly, maliciously, and/or with gross negligence caused the death of Mr. Gibbs by failing to feed him and other reasonably provide for his well-being and safety.

67. By doing so, the aforementioned unknown jail employees committed and inflicted illegal and unconstitutionally cruel and unusual punishment in violation of Mr. Gibb's rights under the Maryland Declaration of Rights, Article 16.

68. This cruel and unusual punishment in failing to keep the decedent sufficiently nourished to remain alive was intentional, malicious, unreasonable, undertaken with gross negligence and/or with reckless disregard for human life and without justification.

69. At the time of said cruel and unusual punishment, Mr. Gibbs was handcuffed and otherwise restrained and imprisoned on suicide watch and protective custody and he posed no threat of harm or nuisance to any jail employees or to anyone else in this confined, incarcerated, shackled state.

70. Under the circumstances alleged herein, the actions and omissions of unknown jail employees were unreasonable and unjustifiable and the cruel and unusual punishment was illegal and in violation of the decedents rights under Article 16 of the Maryland Declaration of Rights.

71. The wrongful acts and omissions unknown jail employees, of described above, factually, directly, and proximately caused Mr. Gibb's injuries, pain, suffering, and death.

72. All of the Plaintiff's claims, past, present, and prospective were, are, and will be due solely to and by reason of the wrongful acts and/or omissions of the unknown jail employees, without any negligence or want of due care on the part of the Plaintiff or the decedent contributing thereunto.

73. The aforementioned unknown jail employees were agents, servants, and/or employees of Montgomery County and therefore Defendant Montgomery County is liable to Plaintiff Pauline Gibbs for such damages as might have been recovered by the deceased himself had he survived the injury and brought this action for the physical and emotional pain and suffering, mental anguish, and economic loss.

WHEREFORE, Plaintiff Pauline Gibbs, as Personal Representative of the Estate of Paul Gibbs, claims compensatory damages in an amount that exceeds $75,000.00 and claims punitive damages in the amount of $10,000,000.00, and claim such other and further relief to which Plaintiff may be entitled.

### Count 4 – Survival Action – Based on a Violation of the Maryland Declaration of Rights, Article 16

74. Plaintiff incorporates as if fully stated herein the allegations contained in Paragraphs 1 through 73, and further alleges as follows:

75. Pursuant to Md. Code, Cts. & Jud. Proc., § 6-401, the decedent's rights of action for unconstitutional, wrongful, malicious, grossly negligent and/or reckless conduct against the Defendant survives in favor of Pauline Gibbs, the Personal Representative of the Estate of Paul Gibbs, who brings these claims.

76. Various unknown individuals who were working at the jail for MCDCR (and by extension, Defendant Montgomery County) illegally, unreasonably, intentionally, wantonly, recklessly, maliciously, and/or with gross negligence caused the death of Mr. Gibbs by failing to feed him and other reasonably provide for his well-being and safety.

77. By doing so, the aforementioned unknown jail employees violated Mr. Gibbs' due process rights guaranteed by Maryland Declaration of Rights, Article 24.

78. This due process violation resulted from the failing to keep the decedent sufficiently nourished to remain alive was intentional, malicious, unreasonable, undertaken with gross negligence and/or with reckless disregard for human life and without justification.

79. At the time of said cruel and unusual punishment, Mr. Gibbs was handcuffed and otherwise restrained and imprisoned on suicide watch and protective custody and he posed no threat of harm or nuisance to any jail employees or to anyone else in this confined, incarcerated, shackled state.

80. Under the circumstances alleged herein, the actions and omissions of unknown jail employees were unreasonable and unjustifiable and the cruel and unusual punishment was illegal and in violation of the decedents rights under Article 24 of the Maryland Declaration of Rights.

81. The wrongful acts and omissions unknown jail employees, of described above, factually, directly, and proximately caused Mr. Gibb's injuries, pain, suffering, and death.

82. All of the Plaintiff's claims, past, present, and prospective were, are, and will be due solely to and by reason of the wrongful acts and/or omissions of the unknown jail employees, without any negligence or want of due care on the part of the Plaintiff or the decedent contributing thereunto.

83. The aforementioned unknown jail employees were agents, servants, and/or employees of Montgomery County and therefore Defendant Montgomery County is liable to Plaintiff Pauline Gibbs for such damages as might have been recovered by the deceased himself had he survived the injury and brought this action for the physical and emotional pain and suffering, mental anguish, and economic loss.

WHEREFORE, Plaintiff Pauline Gibbs, as Personal Representative of the Estate of Paul Gibbs, claims compensatory damages in an amount that exceeds $75,000.00 and claims punitive damages in the amount of $10,000,000.00, and claim such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

Jonathan R. Carroll, CPF#0506140047
Jezic & Moyse, LLC
2730 University Boulevard West, Suite 604
Wheaton, Maryland 20902
(240) 292-7200
(240) 292-7225 (Fax)
jonathancarroll@jezicfirm.com

/S/   *Matthew E. Bennett*

Matthew E. Bennett, Esquire
THE LAW OFFICE OF MATTHEW E. BENNETT
8720 GEORGIA AVENUE; SUITE 701
SILVER SPRING, MARYLAND 20910
Ph.    (301) 587 – 3942
Fax    (301) 589 – 1585
matthew@mbennettlaw.com
CPF# 96 12170067

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs demand a jury on all issues at trial.

                                                                                     Jonathan R. Carroll, CPF#0506140047
                                                                                      Jezic & Moyse, LLC
                                                                                       2730 University Boulevard West, Suite 604
                                                                                      Wheaton, Maryland 20902
                                                                                      (240) 292-7200
                                                                                      (240) 292-7225 (Fax)
                                                                                      jonathancarroll@jezicfirm.com
                                                                                     *Counsel for Plaintiffs*

18



OFFICE OF THE COUNTY ATTORNEY

Marc Elrich
*County Executive*

Marc P. Hansen
*County Attorney*

January 25, 2022

L. Palmer Foret, Esquire
Foret Law, PLLC
5069 Overlook Road NW
Washington, D.C. 20016

    Re:  Notice of Claim/Next of kin and beneficiaries of Paul Gibbs, including his mother, Pauline Gibbs
           Incident of

Dear Mr. Foret:

    We have received the notice of claim you sent to Warden Suzy Malagari. We have been asked to respond.

    We are referring this matter to CorVel Corporation, P.O. Box 44015, Baltimore, MD 21236, for investigation and appropriate action. As to your preservation of evidence request, please note that the Montgomery County Department of Correction and Rehabilitation has been advised to comply with your request within the applicable rules relating to preservation of evidence and within the standard of reasonableness.

    If you have questions regarding this letter, please call Sara Mansoury, (240) 777-6748. Questions regarding the claim should be directed to CorVel Corporation at (800) 234-5003.

Very truly yours,

Patricia Lisehora Kane, Chief
Division of Litigation

PLK/csm
22-000223

cc:  CorVel Corporation
     Kimberly Gay-Armour, Chief
       Division of Risk Management
     Angela Talley, Director
       Department of Correction and Rehabilitation

A

1-28-22